**IN THE COURT OF APPEALS OF IOWA**

No. 23-1446
Filed January 10, 2024

**IN THE INTEREST OF E.G. and W.G.,**
**Minor Children,**

**W.D., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Brent Pattison, District

Associate Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**


        Lori M. Holm, Des Moines, for appellant mother.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

        ConGarry D. Williams of Juvenile Public Defender, Des Moines, attorney

and guardian ad litem for minor children.


        Considered by Tabor, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

At the termination-of-parental-rights hearing for her two children, born in 2018 and 2021, a newly sober mother testified that she wanted "another chance" to "be a better mom to my boys." When asked why she was absent for most of the juvenile court proceedings, the mother answered, "My drug use got really, really bad. I was in a dark place, and—and I just couldn't find my way out."

Though the court praised the mother for her recent sobriety, it concluded her attempt at a "fourth-quarter comeback"—which happened only after the permanency goal was changed to termination—was not enough to move the goalposts. So the court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) and (h) (2023).[1] The mother appeals, claiming the juvenile court erred in finding sufficient evidence that the children could not be returned to her custody, determining termination was in the children's best interests, and denying her request for more time to work toward reunification.

I.      **Background Facts and Proceedings**

When the oldest child was three years old—in May 2022—a neighbor found him in her backyard. He had a large bruise on his head and said that "his mom had hit him." The neighbor called the police, who helped the child find his way back home. Along the way, they ran into the child's aunt. She was out looking for the child and told the officers that she suspected the mother was using methamphetamine because she was "easily agitated, lost her teeth, and was looking skinny." A child protective worker from the Iowa Department of Health and

---

[1] The father's parental rights were also terminated. He does not appeal.

Human Services met the officers at the child's home, where they found his parents and younger brother.[2] The mother, who was in a domestically violent relationship with the father, also had a bruise on her face. The children were placed with relatives under a safety plan pending drug testing of the parents. After the parents failed to complete that testing, the State obtained an order for temporary removal and filed child-in-need-of-assistance petitions. The older child later tested positive for methamphetamine. The children were adjudicated as in need of assistance in June.[3] That same month, the father was arrested for domestic abuse assault against the mother.

By the dispositional hearing in August, the mother had not participated in services outside of visits, which she attended inconsistently. Around then, the mother admitted to the department that she regularly consumed alcohol and used methamphetamine "on occasion." During some of the mother's visits in September, she displayed signs of drug use, including paranoia and talking to herself. The mother was easily frustrated with the children and needed frequent redirection to ensure their safety. She stopped attending visits altogether in October.

In January 2023, the father was arrested for assaulting the mother again. At the permanency hearing in mid-April, the court learned the mother had not contacted the department or had a visit with the children in more than six months.

---

[2] This was not the first time the family was involved with the department. The mother tested positive for methamphetamine when the older child was born in 2018. She completed outpatient substance-abuse treatment the next year, and the child-in-need-of-assistance proceeding was closed.

[3] The mother did not appear for the adjudication hearing, the November review hearing, or the April 2023 permanency hearing.

While the father made a moving plea for more time, the juvenile court agreed with the department that the case should proceed to termination of parental rights.

The State petitioned to terminate the parents' rights a few days after that hearing. At the end of April, the mother was involuntarily committed for treatment. She stayed at a hospital for a couple of weeks before being transferred to House of Mercy for residential substance-abuse and mental-health treatment. When she was at the hospital, the mother contacted the department, seeking visits with the children. The department denied her request at the recommendation of the oldest child's therapist. The mother then filed a motion for services and reasonable efforts. Following a hearing, the court denied the motion but directed the mother to reach out to the therapist. In mid-June, the mother renewed her motion for services and reasonable efforts after talking to the therapist, who was still against visits. The court denied the motion.

The termination hearing was held in late July. The mother testified that she was still in inpatient treatment at House of Mercy. She was pregnant again by the father and unsure whether they would stay together, noting "[r]ight now I'm focusing on my treatment and myself." The mother agreed that she did not voluntarily go to treatment, testifying: "I was court-ordered . . . because of methamphetamine use and my mental health." She said that before her involuntary commitment, she was using methamphetamine "[w]henever [she] could. Basically 24/7."

A progress report from House of Mercy stated the mother "needs improvement" with program attendance and was only "moving towards engagement" in recovery participation and other areas. Despite being diagnosed

with severe anxiety and depression, the mother testified that she had not yet participated in any individual therapy. But she was committed to staying at House of Mercy for the full length of the program—"around two years." The mother explained the children could be placed with her there "in a relatively short period of time" and attend the on-site daycare.

The department caseworker testified the older child's therapist was not on board with resuming visitation while the termination petitions were pending because it would cause more harm than good. If visits were to begin, the therapist told the caseworker "it needed to happen very slowly," with the mother first addressing her own mental health before proceeding toward supervised visits. When asked for her opinion on the mother's request for an extension of time, the caseworker testified: "I would really like to see the boys reach a permanency goal. They're comfortable where they are. I think it would cause more trauma and potentially go through this process again."

In its ruling, the juvenile court concluded the children could not be returned to the mother's custody at the time of the termination hearing. While the court commended the mother for being in treatment, the court noted her sobriety "was relatively new" and "there is still significant work to do for her to resume custody." The court explained that "given her lengthy history of methamphetamine use, prior child welfare involvement, and the parents' related struggles with domestic violence, physical abuse, and supervision in the past, [she] would need to demonstrate more progress in residential treatment, as well as some success in the community before reunification could occur." For many of the same reasons,

the court found termination was in the children's best interest and an extension of time was unwarranted. The mother appeals.

## II.    Analysis

We apply a three-step analysis in conducting our de novo review of terminations of parental rights, asking whether (1) a statutory ground for termination is satisfied, (2) the children's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.,* 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). We confine our review to the steps raised by the parent on appeal. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Here, those are the first two. If those steps support termination, we then consider any ancillary issues raised by the parent, such as whether additional time should be granted. *See* Iowa Code § 232.117(5); *see also id.* § 232.104(2)(b).

### A.    Grounds for Termination

The mother challenges the sufficiency of the evidence supporting termination under section 232.116(1)(f) and (h), which apply separately to the children given their ages. She only challenges the final common element of each provision—that the children could not be returned to her custody at the time of the termination hearing.[4]  *See* Iowa Code § 232.116(1)(f)(4), (h)(4); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

---

[4] *See In re B.W.*, No. 23-0518, 2023 WL 4759462, at *3 n.5 (Iowa Ct. App. July 26, 2023) (discussing the two different interpretations in our case law for finding that children "cannot be returned" to parental custody). Our conclusion is the same under either interpretation.

The mother seemed to acknowledge at the hearing that the children could not immediately be placed with her at residential treatment, agreeing with her attorney that there would need to be a "reunification process with the boys." But she overlooked ongoing barriers to that reunification process. Although she was in a controlled environment that would ensure the children's safety, the mother had no contact with them for nearly ten months. During that time, the children became integrated into their foster home, where they were thriving. One of the foster mothers told the court at the end of the hearing that both children "were doing fantastic," especially the oldest child, who had struggled the most. According to that child's therapist, any reintegration of the mother into the children's lives would need to happen "very slowly."

While the mother had commendably achieved more than ninety days of sobriety, a progress report from the inpatient facility stated that she was not yet fully engaged in recovery. The mother had only attended four out of the ten parenting classes that she had been offered and had not yet started individual therapy, even though it was available. Notably, the mother has been down this road before. In the past juvenile court case with the oldest child, she successfully completed substance-abuse treatment for her methamphetamine addiction only to end up back where she started. *See In re H.L.*, No. 14-0708, 2014 WL 3513262, at *3 (Iowa Ct. App. July 16, 2014) (stating "[w]hat's past is prologue" and citing cases in which a parent's past performance is viewed as evidence of the parent's future); *see also In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (noting a parent's past conduct helps determine future behavior). Given the mother's history, we agree with the juvenile court that she "would need to demonstrate more progress

in residential treatment, as well as some success in the community before reunification could occur." *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting.").

For these reasons, we find the evidence was sufficient to support termination under section 232.116(1)(f) and (h).

## B. Best Interests

Next, the mother claims termination is contrary to the children's best interests. In assessing whether termination is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

The mother argues the children would be safe with her at inpatient treatment. Yet, we have already concluded the children cannot be returned to the mother's custody at present. The mother also argues that termination is not in the children's best interests because it would sever their relationship with their yet-to-be-born sibling. While sibling ties are important, the overall question is what is in the children's best interests. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994).

From a best-interests standpoint, there is a big difference between severing established sibling ties versus ties between siblings who have never met, as here. *See id.* (affirming separation of siblings where they "never resided together" or knew each other and one of the children was "strongly bonded to the foster parents

with whom he has spent almost his entire life"). All else considered, we find termination to be in the children's best interests. It will satisfy the children's long-deserved needs for safety and a permanent home—the defining elements of a child's best interests. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). It will also provide them with an opportunity to be adopted by their foster placement, where the children have become integrated, their behavioral issues have stabilized, and they have flourished. *See* Iowa Code § 232.116(2)(b).

### C.  Additional Time

Finally, the mother claims the court should have granted her request for more time for reunification. Additional time is appropriate only if we can conclude "the need for removal . . . will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). As noted, we agree with the juvenile court that the mother would need to participate in and complete treatment, with an extended period of sobriety and stability in the community, before the children could be returned to her care. With her history, she needs more than six months to accomplish those goals. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). Because we cannot conclude the need for removal will no longer exist after six months, we find additional time is not warranted or in the children's best interests. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021).

We affirm the termination of the mother's parental rights.

**AFFIRMED.**